UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EMORY & WEBB, INC.<br><br>      Plaintiff<br><br>-against-<br><br>JONATHAN CHRISTY, MATT CHRISTY, CORP FIN SERV, INC., CFS DENTAL DIVISION, LLC, and JOSEPH M. DIMARCO JR.<br>      Defendant. | **COMPLAINT AND JURY DEMAND**<br><br>**DOCKET NO.:** |

  The Plaintiff, Emory & Webb, Inc. ("E&W" or "Plaintiff"), through its counsel, KEIDEL, WELDON & CUNNINGHAM, LLP, as and for its Complaint in this matter, alleges as follows:

### PARTIES

  1. Emory & Webb, Inc. ("E&W") is and was a domestic corporation duly licensed with the New York Department of Financial Services as an insurance producer, with its principal place of business in Dutchess County, NY.

  2. Upon information and belief, Jonathan Christy ("J. Christy)" is a natural person, residing in Pottstown, PA.

  3. At all times relevant J. Christy is and was duly licensed with the New York Department of Financial Services as an insurance producer.

  4. Upon information and belief, Matthew Christy ("M. Christy)" is a natural person, residing in Boyertown, PA.

  5. Upon information and belief, Corp Fin. Serv, Inc. ("CFS") is a foreign business corporation, organized under the laws of the state of Pennsylvania with its principal place of business located in Philadelphia, PA.

1

6.  Upon information and belief CFS Dental Division LLC ("CFS Dental") is a foreign limited liability company, organized under the laws of the state of New Jersey.

7.  Upon information and belief, none of CFS Dental's members are residents of New York.

8.  Upon information and belief, Joseph M. DiMarco Jr. is a natural person who is a citizen of, and resides in New Jersey.

## **VENUE & JURISDICTION**

9.  The United States District Court has original jurisdiction over the subject matter of this action under 28 U.S.C. § 1332(a) in that this is an action where the amount in controversy exceeds the sum of $75,000 exclusive of interests and costs and there is complete diversity of citizenship between Plaintiff and Defendant.

10. Upon information and belief, this Court has jurisdiction over Defendants pursuant to CPLR § 302 as the claims arise out of or relate to Defendants' transacting to supply goods or services in New York.

11. Upon information and belief, this Court has jurisdiction over Defendants pursuant to CPLR § 302 as the claims arise out of or relate to Defendants' business within New York.

12. Upon information and belief, this Court has jurisdiction over Defendants pursuant to CPLR § 302 as the claims arise out of tortious acts within New York.

13. Upon information and belief, this Court has jurisdiction over Defendants pursuant to CPLR § 302 as the claims arise out of tortious acts causing injury to person or property within New York and Defendants regularly do or solicit business, engage in a persistent course of conduct and/or derive substantial revenues from goods used or consumed or services rendered in New York and/or Defendants expected and/or should reasonably have expected their acts to have

consequences in New York and derive substantial revenue from interstate or international commerce.

14. Venue is proper within this jurisdiction pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this district, or, in the alternative, the Defendants are subject to the court's personal jurisdiction with respect to this action.

## BACKGROUND

**A.     J. Christy's Employment with E&W**

15. From on or about December 18, 2017, to on or about July 31, 2021, J. Christy was employed by E&W.

16. In connection with his employment by E&W, E&W and J. Christy entered into an Employee Non-Disclosure and Non-Piracy Agreement (the "J. Christy Agreement").

17. In the J. Christy Agreement, J. Christy acknowledged that, during the course of his employment, certain of E&W's confidential information, including technical information, including E&W's methods, processes, formulae, compositions, systems, techniques, computer files, and programs and research projects and business information, including customer lists, pricing data, carrier and underwriting information, expiration lists, financial data and marketing, production or merchandising systems or plans, may be disclosed to him.

18. During the course of his employment with E&W, such confidential information was, in fact, disclosed to J. Christy.

19. In the J. Christy Agreement, J. Christy agreed that he would not use, disclose or divulge any trade secrets, confidential information or other proprietary data of E&W.

20. In the J. Christy Agreement, J. Christy agreed that, for two years after his leaving

E&W, if he received any commissions, fees, or salary, either directly or indirectly, resulting from any business owned by or attributed to clients of E&W or produced by J. Christy during the period of time while the J. Christy Agreement was in effect, he would pay to E&W an amount equal to three times the actual or anticipated annul gross commission which would or could have been earned by E&W from said business within fifteen days of any premium payment.

**B.     M. Christy's Employment with E&W**

21.     From on or about September 6, 2019, to on or about September 1, 2021, M. Christy was employed by E&W.

22.     In connection with his employment by E&W, E&W and M. Christy entered into an Employee Non-Disclosure and Non-Piracy Agreement (the "M. Christy Agreement").

23.     In the M. Christy Agreement, M. Christy acknowledged that, during the course of his employment, certain of E&W's confidential information, including technical information, including E&W's methods, processes, formulae, compositions, systems, techniques, computer files, and programs and research projects and business information, including customer lists, pricing data, carrier and underwriting information, expiration lists, financial data and marketing, production or merchandising systems or plans, may be disclosed to him.

24.     During the course of his employment with E&W, such confidential information was, in fact, disclosed to M. Christy.

25.     In the M. Christy Agreement, M. Christy agreed that he would not use, disclose or divulge any trade secrets, confidential information or other proprietary data of E&W.

26.     In the M. Christy Agreement, M. Christy agreed that, for two years after his leaving E&W, if he received any commissions, fees, or salary, either directly or indirectly, resulting from any business owned by or attributed to clients of E&W or produced by M. Christy during the

period of time while the M. Christy Agreement was in effect, he would pay to E&W an amount equal to three times the actual or anticipated annul gross commission which would or could have been earned by E&W from said business within fifteen days of any premium payment.

27. On or about September 1, 2021, M. Christy resigned his employment with E&W.

**C.  CFS's Producer Agreement with E&W**

28. On or about June 4, 2019, CFS entered into a Producer Agreement with E&W (the "CFS Agreement").

29. The CFS Agreement, among other things, governed terms under which E&W would place risks for CFS's clients with insurers.

30. As a condition of the CFS Agreement, CFS guaranteed the full payment due E&W of all premiums, taxes and fees, on every insurance contract bound for CFS pursuant to the agreement.

31. Per the terms of the CFS Agreement, E&W was to remain the property of E&W until such time as the CFS Agreement was terminated and CFS had accounted for and paid to E&W all premiums and other monies due in accordance with the terms of the CFS Agreement.

32. By letter, dated September 27, 2021, E&W terminated the CFS Agreement.

33. To date, CFS has not accounted for and paid to E&W all premiums and other monies owed in accordance with the CFS Agreement.

**D.  CFS Dental's Producer Agreement with E&W**

34. On or about June 4, 2019, CFS Dental and/or Joseph M. DiMarco entered into a Producer Agreement with E&W (the "CFS Dental Agreement").

35. The CFS Dental Agreement, among other things, governed terms under which E&W would place risks for CFS Dental and/or Mr. DiMarco's clients with insurers.

36. As a condition of the CFS Dental Agreement, CFS Dental and/or Mr. DiMarco guaranteed the full payment due E&W of all premiums, taxes and fees, on every insurance contract bound for CFS Dental and/or Mr. DiMarco pursuant to the agreement.

37. Per the terms of the CFS Dental Agreement, E&W was to remain the property of E&W until such time as the CFS Dental Agreement was terminated and CFS Dental and/or Mr. DiMarco had accounted for and paid to E&W all premiums and other monies due in accordance with the terms of the CFS Dental Agreement.

38. By letter, dated September 27, 2021, E&W terminated the CFS Dental Agreement.

39. To date, neither CFS Dental nor Mr. DiMarco has accounted for or paid to E&W all premiums and other monies owed in accordance with the CFS Dental Agreement.

**E.    The Defendants Steal E&W's Accounts**

40. Upon information and belief, J. Christy and M. Christy (together "Christys) are now employed by, or otherwise working with CFS, CFS Dentistry and/or Mr. DiMarco (collectively the "CFS Defendants").

41. Upon information and belief, prior to resigning from E&W, the Christys provided confidential customer information belonging to E&W to the CFS Defendants, in violation of the M Christy Agreement and the J. Christy Agreement (together the "Christy Agreements")

42. Upon information and belief, the Christys, at the CFS Defendants urging, began utilizing E&W's confidential information, trade secrets, and/or proprietary information to solicit E&W's customers to transfer their business to the CFS Defendants.

43. Upon information and belief, based upon such solicitation, several of E&W's customer, in fact, transferred their business to the CFS Defendants.

44. The annual gross commissions of the accounts at issue is at least $54,921.49 and

continuing to grow.

45. Upon information and belief, at all times relevant, the CFS Defendants were aware of the Christy Agreements and their restrictions on the Christys' use of E&W's confidential information, trade secrets and/or proprietary information.

46. On September 10, 2021, Keidel, Weldon & Cunningham, LLP, on behalf of E&W wrote to the Defendants reminding them of the terms of the Christy Agreements and demanding that they cease and desist from utilizing E&W's proprietary information, trade secrets and confidential information and interfering with E&W's business relationships and prospective economic advantages

47. Upon information and belief, the Defendants have not ceased and desisted as demanded in the above referenced letters, but have instead, continued to utilize E&W's proprietary information, trade secrets and confidential information to solicit E&W's customers and otherwise interfere with E&W's business relationships and prospective economic advantages.

## FIRST COUNT
### (As Against the Christys)

48. E&W repeats and realleges the allegations contained in the foregoing paragraphs with the same force and effect as if set forth at length herein.

49. The terms of the Christy Agreements preclude the Christys from using E&W's proprietary information, trade secrets and confidential information for themselves or others or disclosing or divulging the same to others.

50. Upon information and belief, the Christys have utilized E&W's proprietary information, trade secrets and confidential information to solicit and/or otherwise encourage E&W's customers and clients to transfer their business the CFS Defendants.

51. As a result of the foregoing, the Christys have breached their respective contractual

obligations owed to the E&W.

52. E&W has been damaged as a result of the Christys' breach of the Christy Agreements. Such damage includes monetary losses now estimated to be at least $164,764.47, and is anticipted to increase.

## SECOND COUNT
### (As Against the Christys)

53. E&W repeats and realleges the allegations contained in the foregoing paragraphs with the same force and effect as if set forth at length herein.

54. The Christy Agreements required that, in the event either or both of the Christys receive any commissions, fees or salary, directly or indirectly as a result of any business owned or attributed to clients of E&W or produced by the Christys while the Christy Agreements were in effect, the Christys will pay three times the actual or anticipated gross commissions which would or could have been earned by E&W from such business.

55. Upon information and belief, the Christys have received commissions, fees or salary, directly or indirectly as a result of business owned or attributed to the clients of E&W and/or produced by the Christys while one or both of the Christy Agreements were in effect.

56. The Christys have not made the payments required under the Christy Agreements.

57. Upon information and belief, the Christys' time to make such payments has now run.

58. As a result, the Christys are now in breach of the Christy Agreements.

59. E&W has been damaged as a result of the Christys' breach of the Christy Agreements. Such damage includes monetary losses now estimated to be at least $164,764.47, and is anticipted to increase.

## THIRD COUNT
### (As Against the CFS Defendants)

60. The E&W repeats and realleges the allegations contained in the foregoing paragraphs with the same force and effect as if set forth at length herein.

61. Upon information and belief, at all times relevant the CFS Defendants knew and/or should have known of the Christy Agreements.

62. The CFS Defendants intentionally caused, encouraged and facilitated the Christys to the Christy Agreements by engaging in the activities alleged herein.

63. As a result of the CFS Defendants tortious interference with the Christy Agreements, E&W has suffered monetary loss now estimated to be at least $164,764.47, and is anticipted to increase.

## FOURTH COUNT
### (As Against All Defendants)

64. E&W repeats and realleges the allegations contained in the foregoing paragraphs with the same force and effect as if set forth at length herein.

65. The Christys acquired certain of E&W's confidential information, trade secrets, and/or proprietary information, including the names of accounts and confidential information regarding the insurance needs and requirements of such accounts, through a relationship of trust.

66. The CFS Defendants acquired certain of E&W's confidential information, trade secrets, and/or proprietary information, including the names of accounts and confidential information regarding the insurance needs and requirements of such accounts, through improper means, including by causing the Christys to breach their employment contracts with E&W.

67. The Defendants knowingly used E&W's trade secrets and confidential information in ways and at times not authorized by E&W.

68. E&W took all reasonable steps to protect said confidential information, trade secrets, and/or proprietary information.

69. As a result of the Defendants' misappropriation of E&W's confidential information, trade secrets, and/or proprietary information and accompanying unfair competition, E&W has suffered monetary loss now calculated to be at least $164,764.47, and is anticipated to increase.

## FIFTH COUNT
## (As Against All Defendants)

70. E&W repeats and realleges the allegations contained in the foregoing paragraphs with the same force and effect as if set forth at length herein.

71. The Defendants each benefited, at the expense of E&W, by reason of the Christys' breach of their respective employment agreements with and/or fiduciary duties to E&W.

72. The Defendants each benefited, at the expense for E&W, by reason of their use of E&W's confidential information, trade secrets, and/or proprietary information.

73. It is against equity and good conscience to permit the Defendants to retain these benefits.

74. E&W has no adequate remedy at law.

75. As a result, any commissions and/or other benefits obtained by the Defendants from the accounts of E&W's current and/or former customers and/or any other accounts obtained in violation of the Christy Agreements and/or the use of E&W's confidential information, trade secrets, and/or proprietary information is held in constructive trust for E&W and must be returned to E&W.

## SIXTH COUNT
## (As Against the CFS Defendants)

76. E&W repeats and realleges the allegations contained in the foregoing paragraphs

with the same force and effect as if set forth at length herein.

77. The CFS Agreement and the CFS Dental Agreement (together the "Agency Agreements") each make the CFS Defendants liable to E&W for the payment of all premiums, fees and taxes in connection with all insurance contracts bound for the CFS Defendants pursuant to the Agency Agreements, whether or not collected by the CFS Defendants.

78. The CFS Defendants have failed to pay or remit to E&W all premiums, fees and taxes in connection with all insurance contracts bound for the CFS Defendants pursuant to the Agency Agreements

79. Upon information, the outstanding premiums, fees and taxes in connection with all insurance contracts bound for the CFS Defendants pursuant to the Agency Agreements is equal to or greater than $4,220.77.

80. As a result, the CFS Defendants are in breach of the Agency Agreements.

**81.** Upon information and belief, E&W has been damaged by this breach in amount now estimated to be at least $4,220.77.

## SEVENTH COUNT
### (As Against the CFS Defendants)

82. E&W repeats and realleges the allegations contained in the foregoing paragraphs with the same force and effect as if set forth at length herein.

83. The Agency Agreements each require that, upon termination, the CFS Defendants must complete the collection and accounting for all premiums, commissions and other transactions which remain unaccounted for as of the Termination Date, or which arise thereafter for all outstanding insurance policies,

84. E&W, through counsel, terminated the Agency Agreements, effective September 27, 2021.

85. To date, the CFS Defendants have not accounted for premiums, commissions and other transactions.

86. Upon information and belief, the full amount owed by the CFS Defendants to E&W is unknown and cannot be ascertained without an accounting.

87. E&W has no adequate remedy at law.

## EIGHTH COUNT
### (As Against All Defendants)

88. E&W repeats and realleges the allegations contained in the foregoing paragraphs with the same force and effect as if set forth at length herein.

89. Upon information and belief, Defendants are continuing to (1) improperly utilize E&W's confidential information, trade secrets, and/or proprietary information to solicit and/or aid or assist others in soliciting E&W's customers in violation of the Christy Agreements and applicable law; (2) interfere with relationships between E&W's business relationships; (3) intentionally interfere with E&W's prospective economic advantages, for the purposes of harming E&W, (4) communicate, divulge and/or make use of E&W's Confidential information, trade secrets, and/or proprietary information, including the names of accounts and confidential information regarding the insurance needs and requirements of such accounts; and (5) unfairly compete with E&W.

90. As a result of this continued conduct by Defendants, E&W has sustained and continues to sustain irreparable harm which can only be addressed and curtailed by way of injunctive relief.

91. E&W has no adequate remedy at law.

WHEREFORE, the E&W prays for judgment against the defendants as follows:

    a. Monetary damages against all defendants in an amount to be calculated at trial and

  not less than $164,764.47;

b. Monetary damages against the CFS Defendants in an amount to be calculated at trial and not less than $$4,220.77;

c. Ordering the CFS Defendants to provide an accounting of all premiums, commissions and other transactions which remain unaccounted for as of the Termination Date, or which arise thereafter for all outstanding insurance policies, and upon such accounting to immediately remit such amounts to E&W;

d. Injunctive relief prohibiting defendants from (1) soliciting and/or aiding or assisting others in soliciting E&W's customers; (2) interfering with relationships between E&W and its customers or potential customers, and/or (3) communicating, divulging and/or making use of E&W's confidential information, trade secrets, and/or proprietary information including the names of accounts and confidential information regarding the insurance needs and requirements of such accounts;

e. A constructive trust in favor of E&W on all commissions and/or other benefits obtained by Defendants from the accounts of the E&W's current and/or former customers and/or the use of E&W's confidential information, trade secrets, and/or proprietary information is held in constructive trust for E&W and must be returned to E&W;

f. Attorney's fees and disbursements incurred in connection with this action;

g. Interest as provided by law; and

h. Such other and further relief as to this Court seems just and proper.

## JURY DEMAND

The Plaintiff herein demands a trial by jury.

Dated: White Plains, NY
       April 27, 2022

                KEIDEL, WELDON & CUNNINGHAM, LLP

            By:   /s/Robert W. Lewis
                   Christopher B. Weldon, Esq.
                   Robert W. Lewis, Esq.
                   Attorneys for the Plaintiff
                   Emory & Webb, Inc
                   925 Westchester Avenue, Suite 400
                   White Plains, NY  10604
                   914-948-7000
                   cweldon@kwcllp.com
                   rlewis@kwcllp.com